WILMARTH, Respondent, v. HILL, et al, Appellants.

(226 N. W. 560.)

(File No. 6634.   Opinion filed August 3, 1929.)

See, also, 226 N. W. 557.

*McCoy & McCoy* and *Null & Royhl,* all of Huron, for Appellants.

*Chamberlain & Hall* and *Gardner & Churchill,* all of Huron, for Respondent.

BURCH, J.   Plaintiff, as executrix of the estate of Albert W. Wilmarth, deceased, brings this action to determine the ownership of lots 5 and 6 in block 7, First Railway addition to the city of Huron.   She claims Wilmarth purchased the lots of Mrs. Salisbury; that he paid for them and caused a deed to issue from Mrs. Salisbury to Robert B. Hill, who thereafter held the property in trust for Wilmarth; that, after the death of Wilmarth, Robert B. Hill conveyed the property to his sister, May H. Hill, in violation

of his trust. She prays for a decree establishing a resulting trust in favor of Wilmarth's estate. The defendants deny that the estate has any interest or title in the property. May H. Hill claims to be the owner in fee, and Robert B. Hill disclaims any interest in the property at this time.

The trial court found in favor of plaintiff, and entered an appropriate decree. Defendants appeal from the judgment and an order denying a new trial.

██ ██ There are a number of assignments of error pertaining to the admission of statements of Wilmarth, which were objected to on the ground that the statements were self-serving. Inasmuch as the case was tried to the court and it will be presumed only competent evidence was considered, the admission of such evidence is not prejudicial, if there is sufficient competent evidence to support the decree. The principal question involved is the sufficiency of the evidence to support the decree. Under this heading we think all the assignments can be sufficiently considered. In considering the sufficiency of the evidence we will confine ourselves to the competent evidence. The facts will sufficiently appear as we proceed.

Mrs. Salisbury originally owned the lots involved in this action, together with lots 2, 3, and 4 in the same block. On the 27th of December, 1919, she conveyed all of the lots to Robert B. Hill by warranty deed. This deed was recorded December 30th. The following day, December 31st, Robert B. Hill conveyed lots 2, 3, and 4 to May H. Hill, and she recorded her deed to those lots on January 29, 1920. On the same day, December 31st, May H. Hill claims that she received a warranty deed from Robert B. Hill to lots 5 and 6, the property in question in this action. This last-mentioned deed was not recorded until the 9th of December, 1924, the date of Wilmarth's death. There was evidence tending to show that the name of the grantee, May H. Hill, was written with a different typewriter than the one used for writing the other portions of the body of the deed, and that the ink used in canceling the revenue stamps thereon was much fresher than that used in affixing the signatures to the deed. Evidence tending to show that Wilmarth had exercised apparent ownership over the property, received the rents, made repairs, paid taxes, and accounted for the rents in his income tax return was introduced. Such evidence need not be

set out in detail. It is substantial and strongly tends to show Wilmarth claimed the property as his own. His actions were consistent with such claim, and not consistent with his having no interest therein. May H. Hill testified, and it is apparent from her testimony that, at the time of the purchase of the property from Mrs. Salisbury, Wilmarth paid a considerable portion of the purchase price; he having paid some $8,500, while she paid less than $4,000. May H. Hill and Robert B. Hill both admit that Wilmarth had an interest at one time in the purchase of the property of Mrs. Salisbury. May H. Hill was for about 27 years associated with Wilmarth as his stenographer. Wilmarth was an attorney, and dealt more or less in real property. In a number of real estate transactions he and May H. Hill were interested together in the purchase and sale of properties. May H. Hill attempted to testify to a number of transactions with Wilmarth, by which she became the owner of the property in suit, but she was not allowed to testify on the ground that, as a party to the action, she was disqualified to testify against the executrix.

It is apparent that Wilmarth treated the property as his own, and the relations between May H. Hill and Wilmarth were such that his actions and conduct in reference thereto were not only known to her, but must have been with her consent and in accordance with some understanding and arrangement between the two. There were six lots involved in the deal, being lots 1 to 6, inclusive, and Wilmarth's conduct and actions indicating ownership pertained to the two lots in dispute in this action, namely, lots 5 and 6. May H. Hill seems to have apparent ownership over lots 3 and 4, and lots 1 and 2 were conveyed to Angle in February of 1920. The evidence is not very clear as to the ownership of these two lots. They were conveyed by Miss Hill, but she indicates in her testimony that Wilmarth had an interest in the lots and was entitled to his share of the profits made thereon, and she attempts to account for such profits. There were a good many book accounts introduced in evidence showing numerous transactions between the defendant May Hill and Wilmarth, many of which pertain to property other than that involved in this suit and other than that pertaining to the six lots. Such accounts are unintelligible and practically impossible to understand without the aid of counsel, the benefit of which the trial court had. It is apparent, however, that

originally Wilmarth had an interest in the six lots. His acts of ownership later over lots 5 and 6 while May Hill exercised similar rights over lots 3 and 4 is indicative of a division of the property whereby Wilmarth was to have the lots in suit as his own. In reference to these two lots there were a number of leases, at least one of which was drawn by May Hill but signed by Wilmarth. He paid for repairs thereon, insurance policies were issued to and premiums paid by Wilmarth, his income tax return accounts for the profits on the sale of lots 1 and 2, but does not anywhere account for a sale of lots 5 and 6; the income tax returns were sworn to before May Hill as notary. Although there were very numerous transactions between the parties extending over a great many years, May Hill presented no claim against the estate. The deed to the property executed by Robert B. Hill to May Hill is claimed to have been executed on the 31st of December, 1919, a few days after it was conveyed by Mrs. Salisbury to Robert B. Hill, but the deed was not recorded until the day of the death of Wilmarth, at 4:30 in the afternoon; whether this was before or after Wilmarth's death does not appear. It is claimed that the face of the deed indicates that the name of the grantee was inserted by a typewriter that was not used for the rest of the deed. There is some question about the date when the revenue stamps were canceled as indicated by the condition of the ink. The court heard the evidence, was able to see and hear the witnesses, to see the original instruments as they were introduced in evidence, and we cannot say that a preponderance of the evidence is against his findings.

The judgment and order appealed from are therefore affirmed.

POLLEY, CAMPBELL, and BROWN, JJ., concur.

SHERWOOD, P. J., not sitting.